NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DOROTHEA J. CRISMAN,<br><br>Plaintiff,<br><br>v.<br><br>JO ANN B. BARNHART, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Hon. Dennis M. Cavanaugh<br><br>**OPINION**<br><br>Civil Action No.: 05-1979 |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon Plaintiff Dorthea J. Crisman's ("Plaintiff") appeal from the Commissioner of Social Security's ("Commissioner") final decision denying Plaintiff's request for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). The matter is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. After reviewing all of the submissions by both parties and for the reasons stated below, the Court finds that the Commissioner's decision is based on a complete analysis supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## I. BACKGROUND

### A. Procedural History

Plaintiff applied for DIB, alleging disability as of April 27, 1996. (Tr. at 22). This application was denied. Plaintiff filed a request for a hearing, which was held in May 2002. (Tr. at 370). In August 2002, Administrative Law Judge (ALJ) Christopher P. Lee, ruled Plaintiff

was not disabled. (Tr. at 370). The Appeals Council granted Plaintiff's request for review on March 14, 2003. (Tr. at 370). After hearing testimony from a vocational expert, the ALJ ruled Plaintiff was not disabled within the meaning of the Act. Plaintiff appealed that decision to this Court on April 13, 2005.

**B. Facts**

**1. Plaintiff's Testimony**

______According to the transcript, Plaintiff attended school until ninth grade and she is able to read and write. (Tr. at 373-74). Plaintiff never received any vocational training, but worked as a clerk in a post office for six months. (Tr. at 374). Plaintiff also worked in a retail warehouse in a supervisory capacity until 1996. (Tr. at 374). As a warehouse supervisor, Plaintiff oversaw the work of ten women-packers. (Tr. at 376). Plaintiff's job duties also included picking and packing orders, which involved lifting between fifty and seventy pounds with the help of others. (Tr. at 375). Plaintiff worked in this capacity for ten years.

Plaintiff is taking several medications, which she states make her sleepy, dizzy, nauseous, and only dull her constant pain. (Tr. at 377). Plaintiff states her asthma is under control with medication, and that she is currently seeing Dr. Vitale for general treatment. (Tr. at 377). Dr. Vitale suggested that she use a cane, but Plaintiff is currently unable to afford one. (Tr. at 377-78).

Plaintiff states that she is able to sit for approximately twenty minutes, stand for ten minutes, and walk about half a block. (Tr. at 378). Plaintiff also asserts that she suffers from constant and severe pain in her back and legs, for which she takes medication. (Tr. at 379). Plaintiff alleges that she is unable to carry medium to heavy objects and has difficulty walking up

or down stairs. (Tr. at 379). Plaintiff also stated that she has recently experienced numbness in her left hand and foot. (Tr. at 380). Plaintiff claims she has arthritis in her hips, which prevents her from sleeping at night. (Tr. at 380). She also stated that her appetite is diminished. Plaintiff is able to dress and bath herself without help.

Plaintiff believes she suffers from depression. (Tr. at 382-86). She recently saw a neurologist, Dr. Jeffrey, who conducted an MRI and has scheduled Plaintiff for a bone scan, recommending physical therapy. (Tr. at 386). Dr. Vitale has suggested that Plaintiff see an orthopedic doctor. (Tr. at 386).

**2. Vocational Expert's Testimony**

Donald Slive, a vocational expert ("VE"), described Plaintiff as a fifty-year old woman with an eighth grade education, who worked as a stock clerk. The VE stated that this type of work is semi-skilled and requires a heavy physical demand. (Tr. at 387). The VE also stated that Plaintiff's work as a mail clerk is an unskilled position that requires light physical demand. The VE further described her work as packing-supervisor as having a light physical demand and being a skilled position. (Tr. at 378). The VE stated that the only transferable skill Plaintiff has is supervision as that was her only skilled requirement while working. (Tr. at 378-88).

The ALJ asked the VE to look at hearing exhibit, "7F," a State agency medical assessment which reflected a physical functional capacity for medium work under the Commissioner's regulations, and to consider Plaintiff's current condition when answering which of her past relevant jobs she could return to. The VE stated that she could return to all of them. (Tr. at 389). The ALJ then asked the VE to look at hearing exhibit "12F," the assessment of Dr. Vitale indicating an inability to do even sedentary work, and answer the same question. Here, the

VE responded that Plaintiff could not perform any of her past relevant work, stating that the restriction of being able to lift less than ten pounds eliminated any work in both the national and local economy. (Tr. at 389-90). In looking over hearing exhibits "8F" and "9F" the VE stated that with non-exertional limitations Plaintiff could return to all relevant work. (Tr. at 390). The VE further stated that if a person has to sleep four hours during the workday, as Plaintiff alleges, than she cannot work because a workday usually requires a minimum of eight hours at the work-site. (Tr. 390-91).

## II. STANDARD OF REVIEW

A review of the Commissioner's final decision is made pursuant to 42 U.S.C. § 405(g), which provides:

> "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ..."

42 U.S.C. § 405(g)(West Supp. 2000). Section 405(g) permits a District Court to review transcripts and records upon which a determination of the Commissioner is based. Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000). If supported by substantial evidence the factual findings of disability made by the Commissioner must be accepted as conclusive. Plummer, 186 F.3d 422, 427 (3d Cir. 1999); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Substantial evidence has been quantified as "more than a mere scintilla." Burnett v. Commissioner, 220 F.3d 112, 118 (3d Cir. 2000); Ventura, 55 F.3d at 901 (quoting Richardson

v. Perales, 402 U.S. 389, 401 (1971)). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept to support a conclusion." Morales, 225 F.3d at 316 (3d Cir. 2000); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

The substantial evidence standard allows a District Court to review an ALJ decision, yet avoid interference with the Commissioner's administrative responsibilities. Stewart v. Secretary of Health, Educ. and Welfare, 714 F.2d 287, 290 (3d Cir. 1983); Claussen v. Chater, 950 F.Supp. 1287, 1292 (D.N.J. 1996). The standard is "deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). The record must be reviewed as a whole to determine whether substantial evidence is present to support the ALJ's decision. Id.

Reasonable minds can reach different conclusions following review of the evidentiary record upon which the decision of the Commissioner is based. Nevertheless, in such cases, the function of a District Court is to determine whether the record, as a whole, contains substantial evidence to support the findings of the Commissioner. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994) (quoting Richardson, 402 U.S. at 401 (1971)); Schaudeck, 181 F.3d at 431. A court may not displace the choice of an administrative body "between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." N.L.R.B. v. Greensburg Coca-Cola Bottling Co., 40 F.3d 669, 672-73 (3d. Cir. 1994) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)); see also Hartranft, 181 F.3d at 360. Nonetheless, an ALJ is expected to do more than simply state factual

conclusions. Stewart, 714 F.2d at 290; Claussen, 950 F.Supp at 1292. Rather, an ALJ must make specific findings of fact to support his or her ultimate findings. Sykes v. Apfel, 228 F.3d 259, 269 (3d Cir. 2000).

An ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when the testimony of a physician treating a claimant is rejected. Morales, 225 F.3d at 320; Plummer, 186 F.3d at 429; Wier on Behalf of Wier v. Heckler, 734 F.2d 955, 961 (3d Cir. 1984); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). An ALJ must also give serious consideration to the subjective complaints of pain of the claimant, even when those assertions are not fully confirmed by objective medical evidence. Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993); Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986). Where a claim is supported by competent evidence, an ALJ must specifically weigh that evidence. Schaudeck, 181 F.3d 429, 435 (citing Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Title II of the Act provides for the payment of benefits to persons suffering from disabilities who have made contributions to the disability insurance program. 42 U.S.C. § 423(a)(1)(D). Title II provides for the payment of benefits when a claimant establishes his or her inability:

> "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B); see also Schaudeck, 181 F.3d at 431. The Act further provides that an individual,

> "shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Sykes, 228 F.3d 259, 262.

In accordance with the authority granted under 42 U.S.C. § 405(a), as incorporated by reference in 42 U.S.C. § 1383(d)(1), the Commissioner has promulgated regulations (the "Regulations") to give effect to and further define the provisions of the Act. 20 C.F.R. §§ 404.1520, 416.920. The Regulations provide for a five-step sequential evaluation of the claim of an individual for DIB and SSI. Morales, 225 F.3d at 316; Sullivan, 493 U.S. at 525; Knepp, 204 F.3d at 82; Schaudeck, 181 F.3d at 431-432.

In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R.§§ 404.1520(a), 416.920(a).

> "Substantial gainful activity is work that is both substantial and gainful .... Substantial work activity is activity that involves doing significant physical or mental activities. [An applicant's] work may be substantial even if it is done on a part-time basis or if [the applicant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the applicant] worked before .... Gainful work activity is work activity that [the applicant] do[es] for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized."

20 C.F.R. §§ 407.1572, 416.972. If the Commissioner determines a claimant is engaged in substantial gainful activity, the claim of disability will be denied, regardless of medical condition. Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. § 404.1520(b)).

If the claimant is not engaged in substantial gainful activity, the analysis of the claim proceeds to step two. Step two, commonly known as the "severity regulation," involves a

minimum threshold determination of whether the claimant is suffering from a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is considered severe if it is "of a magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.'" Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982) (quoting 20 C.F.R. § 404.1520(c)).

Evidence of a "physical or mental impairment" must be "demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner may require." 42 U.S.C. § 423(d)(5)(A). The Commissioner, however, cannot make "speculative inferences from medical opinions" and a medical opinion may only be rejected on the basis of "contradictory medical evidence." Plummer, 186 F.3d at 428. When a medically determinable impairment exists that can reasonably be expected to produce pain, the intensity and persistence of symptoms must also be evaluated in order to determine what impact, if any, they have on the ability of the claimant to work. Sweeney v. Commissioner of Social Security, No. 99-6048, slip op. at 17 (3d Cir. June 20, 2000) (citing 20 C.F.R. § 416.929(c)(1)).

> "If a claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone, consideration will also be given to such factors as the individual's daily activities; the location, duration, and intensity of the individual's pain; precipitating and aggravating factors; the type, and side effects of medication; treatment received for the relief of pain; and any other measures used for pain relief."

Id. (citing 20 C.F.R. § 416.929(c)(3); Social Security Ruling 96-7p)).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary

to do most jobs." 20 C.F.R. § 404.1521(b). Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing, hearing, and speaking;" "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers, and usual work situations;" and "dealing with changes in a routine work setting." Yuckert, 482 U.S. at 141 (quoting 20 C.F.R. § 404.1521(b)).

An ALJ need only consider medical evidence in step two, without regard to vocational factors such as the age, education, or work experience of the claimant. Id. (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). In step two of the analysis, the claimant must make the threshold showing that his or her impairments are sufficiently severe to satisfy this standard. Yuckert, 482 U.S. at 146 n.5. If a claimant fails to make this showing, he or she is ineligible for DIB or SSI benefits. Id. at 148; Santise, 676 F.2d at 927.

If the claimant is not engaged in substantial gainful activity and has a severe impairment, the evaluation proceeds to step three. Step three requires a determination of "whether the impairment is equivalent to one of a number of listed impairments [(the "Listed Impairments")] that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141. "If the impairment meets or equals [a] [L]isted [I]mpairment [s], the claimant is conclusively presumed to be disabled." Id.; see also 20 C.F.R. §§ 404.1520(d), 416.920(d); Schaudeck, 181 F.3d at 432.

If a claimant does not suffer from a Listed Impairment or its equivalent, the analysis proceeds to steps four and five. Under these steps, "the Commissioner must determine whether the claimant retains the ability to perform either his [or her] former work or some less demanding

employment." Zebley, 493 U.S. at 535 (quoting Heckler v. Campbell, 461 U.S. 458, 469 (1983)); see also Adorno, 40 F.3d. at 46; Williams, 970 F.2d at 1187.

Step four requires an ALJ to consider whether the claimant retains the residual functional capacity to perform work he or she performed in the past. 20 C.F.R. §§ 404.1520(e), 416.920(e); Schaudeck, 181 F.3d 431. Residual functional capacity is defined as what the claimant "can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must evaluate the physical and mental requirements of past work experience of the claimant in determining the residual functional capacity. Knepp, 204 F.3d at 82; Velazquez v. Heckler, 802 F.2d 680, 682 (3d Cir. 1986); 20 C.F.R. §§ 404.1520(e), 416.920(e).

"At step four, vocational factors [such as age, education and work experience] are not considered in determining whether or not a claimant retains the residual functional capacity to perform past relevant work." Williams, 970 F.2d at 1887; see also 20 C.F.R. §§ 404.1560(b), 416.960(b). If the claimant is able to meet the demands of his or her past work, then he or she is not disabled within the meaning of the Act. Yuckert, 482 U.S. at 141; Schaudeck, 181 F.3d at 432; Adorno, 40 F.3d at 46. At step four, as with the previous steps, the claimant bears the burden of proof. Yuckert, 482 U.S. at 146 n.5; Adorno, 40 F.3d. at 46.

If a claimant demonstrates an inability to resume his or her former occupation, the evaluation moves to step five. At this final stage, the burden of proof shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. Morales, 225 F.3d at 316; Yuckert, 482 U.S. at 146 n.5; Adorno, 40 F.3d at 46. Furthermore, a determination of disability by an ALJ at step five must be based upon the age, education, work experience, and residual functional capacity of the

claimant. 20 C.F.R. § 404.1520(f), 416.920(f); Schaudeck, 181 F.3d at432. The ALJ must also analyze the cumulative effect of all of the impairments of the claimant. 20 C.F.R. §§ 404.1545, 416.945.

**B. ANALYSIS**

______Plaintiff makes three arguments in support of her position that the Commissioner's decision is not supported by substantial evidence. First, Plaintiff contends that the ALJ erred in concluding that Plaintiff's adjustment disorder did not meet the level of severity required in the Listings. Second, Plaintiff argues that the ALJ failed to give sufficient weight to her testimony in determining her residual functional capacity. Third, Plaintiff asserts that the ALJ did not give the proper weight to the VE's testimony. The Court will address each argument in turn.

Plaintiff argues that the ALJ improperly concluded that Plaintiff's adjustment disorder did not meet the level of severity required in the Listings. The Court disagrees. Pursuant to the five-step sequential evaluation, the ALJ determined from Plaintiff's testimony and medical records that Plaintiff has severe impairments consisting of the left sciatic syndrom, osteoporosis, and an adjustment disorder. (Tr. at 18-22). However, the ALJ concluded that none of Plaintiff's impairments satisfied the criteria of the Listings. (Tr. at 18-22). In making this finding, the ALJ specifically referred to evidence demonstrating Plaintiff's failure to satisfy the laboratory diagnostic criteria of the spinal disorder Listings and noted that the medical evidence showed Plaintiff had no deficits in motor, sensory or reflex functions. (Tr. at 155-160). Consultative examinations also failed to show evidence of nerve compression, muscle spasm, or atrophy, and as such, the ALJ provided reasonable rationale for his finding that Plaintiff did not satisfy the Listing criteria for spinal disorders. (Tr. at 212).

The ALJ also properly concluded that Plaintiff's adjustment disorder did not satisfy the criteria of that Listing section, explaining that the evidence failed to demonstrate Listing-level limitations in any of the following: activities of daily living, social functioning, concentration, persistence or pace, or episodes of decompensation of extended duration. (Tr. at 19; Def.'s Br. at 6). Further, in coming to this conclusion the ALJ properly relied on the State agency's medical consultant pursuant to 20 C.F.R. §§ 404.1512(b)(6), 416.912(b)(6). Plaintiff, however, argues that there is no evidence supporting the ALJ's finding that she can perform at the medium-exertional level. (Pl. Br. at 1). This Court disagrees with Plaintiff, finding that the ALJ relied on the assessments of the State agency medical consultants, who stated Plaintiff could perform at the medium-exertional level. (Tr. at 216). The ALJ also considered Plaintiff's treating doctor's negative findings as evidence that Plaintiff was indeed able to work. (Def. Br. at 7). Plaintiff's treating physician stated that there was no evidence of a disabling orthopedic condition or any medical evidence to confirm the presence of any abnormality that would prevent Plaintiff from returning to work. (Tr. at 167, 170). In sum, this Court finds that the ALJ properly concluded that Plaintiff's adjustment disorder did not meet the level of severity required in the Listings, and Plaintiff is able to perform work at the medium-exertional level.

Plaintiff also argues that the ALJ failed to give sufficient weight to her testimony in determining her residual functional capacity. In assessing Plaintiff's residual functional capacity, the ALJ considered her testimony, but concluded that it was not completely credible. It is clearly within the ALJ's discretion to determine whether or not a plaintiff's testimony is credible. La Corte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988). In evaluating Plaintiff's complaints, the ALJ is entitled to draw his own conclusions about their veracity. Hartranft v. Apfel, 181 F.3d 358,

362 (3d. Cir. 1999). Further, Plaintiff bears the burden of demonstrating that her complaints are supported by medical evidence, and here, she clearly has not met that burden. Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995).

Plaintiff further argues that the ALJ did not give the proper weight to the VE's testimony. (Pl. Br. at 1). The transcript of the hearing reveals that the ALJ questioned the VE in order to determine whether an individual with Plaintiff's residual functional capacity could perform her past relevant work. (Tr. at 374). The ALJ also presented the VE with several hypothetical situations. The VE first testified that a person with the same residual functional capacity as the Plaintiff would be able to perform at a medium-leveled physical functional capacity, and would therefore be able to perform all of Plaintiff's past relevant work. (Tr. at 389). Then, in analyzing Plaintiff's physician's assessment, the VE concluded that a person with such limitations would not be able to perform any of Plaintiff's past relevant work. (Tr. at 389-90). The ALJ presented the VE with a third hypothetical: could an individual with the medium physical functional capacity assessment and mild limitations in daily living activities could perform Plaintiff's past work? (Tr. at 390). The VE responded that such a person could perform all of Plaintiff's past relevant work. (Tr. at 390). Plaintiff's counsel added to the ALJ's hypothetical by listing Plaintiff's complaints of dizziness, nausea, and the need to sleep for at least four hours during the day. (Tr. at 390). In addressing this hypothetical, the VE stated that such an individual would not be able to perform all of Plaintiff's past work. (Tr. at 391).

______The VE's determination with respect to the first and third hypothetical is consistent with the ALJ's conclusion that Plaintiff has a residual functional capacity for medium work and therefore can perform her past relevant work. The ALJ clearly explained that an individual

retains the capacity to perform her past relevant work when she can perform the functional demands and duties of the job either as she actually performed them or as are generally required by employers through the national economy. (Def. Br. at 14-15). The VE described Plaintiff's past relevant jobs as "light work" and as such can be performed by Plaintiff, who was assessed to have a capacity for medium work.

The Court finds that the ALJ properly relied on the VE's assessment. The ALJ having concluded that Plaintiff's testimony was not credible properly chose to ignore VE's conclusion in answer to Plaintiff's counsel's hypothetical, and instead chose to rely on the VE's answer to his first and third hypothetical, having already appropriately concluded that Plaintiff could perform medium work.

**III. CONCLUSION**

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's factual findings and thus affirms the Commissioner's final decision denying Plaintiff's application for disability benefits. Therefore, the determination of the Commissioner of Social Security is affirmed.

Date: August 14, 2006
Orig: Clerk's Office
cc: All parties
File

S/ Dennis M. Cavanaugh
DENNIS M. CAVANAUGH, U.S.D.J.